is the first case. There is a reference to 20 minutes per side, but that was at a time when the two cases were combined. So unless you have unreasonably relied on our mistake in leaving it at 20, let's see if we can't keep them to 10 minutes a side on that case. Thank you. Counsel for the appellant, you may proceed. Thank you, Your Honor. I'd like to start by making one correction. The government pointed out that the appropriate standard of review for reviewing facts to the applicant was Counsel, could I ask you to speak a little closer to the microphone? We had the same trouble yesterday in the first case. My apologies. The sound system works well if you get close enough to the microphone. The government is correct. The legal standard is abuse of discretion for the application of the facts to the guideline interpretation. In this case, though, Your Honor, the case turns on the interpretation of the guideline, whether the district court correctly interpreted relevant conduct. And it does not affect our position in this case. The relevant conduct issue touches three points. The drugs attributable to Mr. Ortiz, the scope of his role, and also whether the firearm enhancement should apply. I think the most important one to start with would be the drugs, the amount of drugs that were attributed. In this case Assuming that you are correct in the view that the court must find both foreseeability and joint activity, why in this case do you think the district court didn't do that, because the district court did say that the standard was reasonably foreseeable and or within the scope of the agreement? And I think that a little earlier in the argument, the district court references that or standard. In the second part, he does references that and-slash-or in the briefing. But when you look at how the facts were presented and how he's interpreting those facts, the 12 pounds that came from the undercover buys all occurred in the Caldwell area. There is nothing to tie Mr. Ortiz. And the ---- Setting that aside for one moment, just why shouldn't we say that the district court got the standard right and then moved whether it was applied correctly? Because I don't think he got the standard right. I think the court looked at the earlier guideline amendment, the pre-1992 amendment, and looked at that disjunctive instead of the and, the conjunctive. You just have to sort of put an eraser by the ---- I believe it needs to go back to the district court, yes, and have him apply both prongs. What I think the court did was, relying on Gutierrez to some degree, he applied an or standard. It was either foreseeable in the larger scope of a conspiracy or ---- and I think in this case, it had to ---- it has to first become foreseeable to the conspiracy that Mr. Ortiz was involved in, not the one that Mr. Ramos. Your theory, of course, is that there was a Quinn Falls conspiracy that Ortiz had and it was a ---- kind of conspiracy, as Ramos's. But that theory went to trial and obviously was rejected. And the ---- there's a ton of support, it seems to me in the record and in the PSR, for the notion that the conspiracies, while one separate and one merged, at least after Ramos got out of prison, and that the two from then on cooperated. I think the two conspiracies started separately, certainly. Ramos was involved in more than just Caldwell, and that's clear from the transcripts and the record in this case. Mr. Ramos had other people selling in the Quinn Falls area. That does not necessarily convert Mr. Ortiz as a member of Ramos's organization, even if he had one in Quinn Falls. Mr. Ortiz operated separately from many of Mr. Ramos's other drug dealers, quite frankly. Counsel, what ---- to what extent does the fact that the judge adopted the PSR in this case affect this argument? The adoption, I don't think, impacts it because he was adopting the factual findings, as I understood his ruling. In the factual findings, he was correct, there was a 12-pound sale for the Ramos organization in Quinn Falls. The reasoning that he adopted to apply that has a foreseeability as something that I think he looked at the PSR for the factual basis, but not necessarily the legal basis. And his statements in the sentencing indicates he was doing one of the two prongs rather than both. So when you take this and also apply it to the gun enhancement and the role in the argument applies. So I'd like to move to the vouching issue, unless the Court has other questions. On the vouching, I think this is a more difficult question for the Court and for counsel, because this does not occur after briefing or memorandums or opportunity to investigate. This is something that happens quickly during trial. And the is not simply the government saying, believe us, because we bring these people forward. Counsel, are you contending that the AUSA vouched for all of these last witnesses or only for Ms. Virgil? The vouching was for Ms. Virgil and Mr. Benitez and Ms. Guerrera. Ms. Guerrera. Okay. Guerrera. Can you point us very specifically to the lines in that testimony that you believe constitutes vouching? I would have to go back and get that, but I will. I don't have those lines. Can you tell us what you think constituted the vouching here? Yes. The initial vouching is where the government is going through a series of questions about the plea agreement, the truthfulness, and you will agree with me that the most important thing is that the government is going to be able to decide what they want. It's in the closing argument, though, Your Honor, where the government then brings in the court as the keeper or the determination, the determining person for who's telling the truth. They're shifting it from the jury as making the credibility on the witness to the judge by the statement that the judge will make the final determination if these witnesses are being truthful when they go to sentencing. Assuming that that does suggest that the court and the government have a monitoring role and have some basis upon which to measure truthfulness and, therefore, is vouching, how is it plain error, particularly under Nekofia and other cases? It's plain error because it affects the fundamental system. It is moving from the jury determination, moving the credibility of the witness, determining the credibility of the witness, taking it from the jury, placing it with the judge. That I think the court could find was plain error. It did substantially affect Mr. Ortiz's rights. Are there specific provisions in the closing statement in the excerpt of record? Did you? Yes. I believe it's 716, but I will. You don't have to go back to the rest of the record. Your own excerpts have highlighted the passages that you're relying on. Yes. Thank you. And with that, I'll. Do you deserve the remainder of your time? Thank you, Your Honor. I will. Ms. Lindquist. Good morning, Your Honors. In the PSI, which the district court did adopt. Can I ask you to speak a little closer to the microphone? Yes, I'm sorry. In the PSI, which the district court did adopt, there was a finding that because of the joint activity, which began between Mr. Ortiz and Mr. Ramos, that in approximately December or January, 2000 to 2001, Mr. Ortiz was involved in and had knowledge of the scope of the conspiracy. That satisfies both prongs of 1B1.3 regarding foreseeability and joint activity. Ms. Lindquist, the problem that Hampton points out is that the district court cited and presumably cited to rely on Gutierrez, which just isn't right anymore. So how do you get around that? Well, the district court cited Gutierrez not just as an or, but as an and-or, as this Court pointed out.  No, but he said and-or, yes. Sorry. And in addition to citing Gutierrez, the district court specifically adopted the findings in the PSI. Well, the PSR doesn't distinguish, doesn't, isn't conjunctive either. The PS, oh, I'm sorry. I don't quarrel with you at all on the proposition that there's a factual support, there's a factual basis for a conjunctive finding. My question is if the district court improperly thought that the standard came out of Gutierrez, then all the factual support in the world isn't going to make any difference, is it? I think because the district court adopted the findings of the PSR, which at page 44 are in the conjunctive, in that there was joint activity and the Ortiz had the was involved in and had knowledge of the scope of conspiracy that covers both of those factors. In addition, directly below that, in talking about the foreseeability with respect to the firearm enhancement, the PSR does specifically cite 1B1.3, stating that it requires both joint activity and foreseeability, and that, looking at the document as a whole, would indicate that that was the standard that was used in this case. Okay. And that's in paragraph 192? Just a second. 191? Yes, it is. 1B1.3 is cited in paragraph 192 with regard to the firearm. The calculations for the base offense level are in 191, where the PSI specifically says that they joined together after the introduction by Ms. Guerra around November 1999, which is a mistake. It should be 2000, according to the facts. During the course of the conspiracy, Codefendant Ramos stored an undetermined amount of methamphetamine at Mr. Ortiz's residence. In December, Mr. Ramos was arrested with methamphetamine, which was intended for Mr. Ortiz, and because Mr. Ortiz was involved in and had knowledge of the scope of the conspiracy, he is responsible for the deliveries that occurred thereafter during the course of the conspiracy. Counsel, I'm quite interested in the vouching issue, which you'll get to at your convenience. I'll be sure you get to it. That's right where I was going. Thank you, Your Honor. Unless you have further questions about the joint activity, I'd like to move on to vouching. Thank you. As far as the vouching is concerned, the government was only doing what is permissible under the law of the circuit, and that is simply pulling the sting from impeachment by the defense by bringing out the plea agreement that the government had with the defendants who testified. There was no – the provision in the – The point here is that it's not only – at least the suggestion is – that it's not only the prosecutor's vouching, but the implication that the court is also vouching for the – Well, Your Honor, I really don't think we have that here, because what the plea agreement said simply – The closing statement? Oh, you want to go to the closing statement. I was just going to go to the vouching that she was talking about initially with respect to the – There were two kinds of vouching. The first one was the plea agreements, and that was when the defense alleged vouching because the court was to be the ultimate determiner of the sentence, but that didn't have anything to do with the jury making the decisions as to the witness's credibility, simply that the judge would ultimately discern the sentence. The judge's credibility was not brought in to – The comment that was alleged to be vouching in closing had to do with the prosecutor talking about a trial being a crucible of truth, and what he said to the jury was what you try to do at a trial is to create a crucible of truth to bring people in with knowledge and allow you, meaning the jury, to look at it and make your determination. That's the crucible. And if you believe in that crucible, these people – that these people are getting away with murder and that justice is not being done, then you must consider their testimony. I think the problem – Yes? That's helpful what you pointed to, Ms. Lamperry, but I believe that the real problem is probably the prior paragraph where the – where the AUSA said, ultimately the court will make the determination as to whether or not that cooperation has been appropriate and their testimony truthful in this crucible. And if we're discussing the court making that determination, then why hasn't the AUSA suggested that that determination belongs to the court and not to the jury? Well, simply because the court in its closing argument to the jury told the jury that that was their determination to make. You're suggesting that this was a corrective statement, then, in the succeeding paragraph? I think it definitely – if that was the implication that the jury would have drawn from that statement, I think it definitely was corrected both by the court's instructions to the jury at the beginning of the trial and, again, by his instructions at the end of the trial, when he told the jury that they were the sole determiners of the fact, that they were to view these witnesses with great care and caution because they'd entered into plea agreements with the government that could influence their testimony. The court also, of course, instructed that statements and arguments by counsel were not evidence and should not be considered as such, and there was, of course, no objection. So if this were somehow – could somehow be construed as vouching, I think that it could not rise to the level of plain error, particularly given the enormous amount of factual evidence against the defendants in this case. If the court has no further questions, the government will stand on the rest of its brief. Thank you. Ms. Hampton, you have some rebuttal time. Thank you, Your Honor. It is on the excerpt of record at page 58. The transcript is 670, line 23. That's where the government has shifted the burden over, as you've pointed out, Your Honor, from the jury making the finding of fact to the judge making the finding of fact on this witness credibility issue. If ultimately it's the judge who's determining if these witnesses are truthful, the corrective statements towards the end or the curative statements to the end did not overcome this shift. Why haven't they overcome that? Because in the argument it was highlighted that this whole process was designed to come to determining if these witnesses were being truthful or not. And when you pair that up with the arguments on the plea agreements and then telling the jury at this point it's the judge that's going to determine it, so what you do later is not going to have that impact. The judge's instructions at the end of the trial, I don't think, were sufficient to overcome what was probably in the jurors' mind or what we're arguing would have been in the jurors' mind from the government's argument. And this is the judge's determination. We presume that the juries will follow their instructions. So did the judge give an instruction that the jury was to make a determination of truthfulness as to these witnesses? I can't answer that one, Your Honor. I assume that the court gave the instruction that it was up to the jury to determine the facts of the case. Thank you, Counselor. Thank you. Your time has expired. The case just argued will be submitted for decision, and we will proceed to hear argument in Davis v. Slaughter. Counsel for appellant, you may proceed.
judges: O'scannlain, Rymer, Bybee